IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donna Rae Lankford,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV 10-8040-PHX-JWS (ECV)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE JOHN W. SEDWICK, UNITED STATES DISTRICT JUDGE:

**BACKGROUND**

Pending before the court is a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Donna Rae Lankford. Doc. 4. Following a jury trial in Coconino County Superior Court in Flagstaff, Arizona in 2003, Petitioner was convicted of first degree felony murder, kidnaping, first degree burglary and armed robbery. Doc. 10, Exh. A at 6; Doc. 4 at 1-2. On November 25, 2003, Petitioner was sentenced to natural life in prison for the murder conviction and concurrent terms of 21 years each for the other three convictions. Id.

Petitioner, through counsel, filed a timely direct appeal and submitted an opening brief on May 28, 2004. Doc. 10, Exh. A at 6, Exh. B. After briefing was completed, the Arizona Court of Appeals issued a Memorandum Decision on January 13, 2005, in which it affirmed the four convictions and the sentence for the murder conviction. Doc. 10, Exh. A at 2. The

Court of Appeals vacated Petitioner's sentences for the other three convictions and remanded to the trial court for re-sentencing on those offenses. Id. Petitioner filed a Petition for Review to the Arizona Supreme Court on February 24, 2005. Doc. 10, Exh. C. On October 25, 2005, the Arizona Supreme Court denied review. Doc. 10, Exh. D. The Court, however, granted a cross-petition for review filed by the State of Arizona and ordered the matter remanded to the Arizona Court of Appeals in light of two Arizona Supreme Court decisions issued around that time. Id. On remand, the Arizona Court of Appeals issued a new Memorandum Decision on January 26, 2006, in which it vacated the portion of its prior decision that vacated three of the four sentences imposed. Doc. 10, Exh. E at 3. The Court of Appeals then affirmed the three sentences as originally imposed by the trial court. Id.

On January 23, 2006, Petitioner filed a Notice of Post-Conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure. Doc. 10, Exh. F. Through counsel, Petitioner filed a Petition for Post-Conviction Relief on October 4, 2006. Doc. 10, Exh. G. After briefing was completed, the trial court issued an order on March 7, 2007, in which some of Petitioner's claims were dismissed and an evidentiary hearing was set on the remaining claims. Doc. 10, Exh. H. After the evidentiary hearing, the trial court issued a second order in which it denied the claims presented at the evidentiary hearing and denied the overall petition for post-conviction relief. Doc. 10, Exh. I. Petitioner filed a Petition for Review in the Arizona Court of Appeals on June 22, 2007. Doc. 10, Exh. J. The Court of Appeals denied review on March 27, 2008. Doc. 10, Exh. K. A subsequent Petition for Review in the Arizona Supreme Court was denied on July 18, 2008. Doc. 10, Exh. L, M.

Petitioner filed her Petition for Writ of Habeas Corpus in this court on March 8, 2010. Doc. 1. After the District Court Judge dismissed the original petition with leave to amend, Petitioner filed an Amended Petition on May 11, 2010. Doc. 4. Petitioner raises four grounds for relief in the petition, though her second ground for relief includes several claims of ineffective assistance of counsel. In ground one, Petitioner alleges that the trial court violated the Fourteenth Amendment by abusing its discretion in imposing multiple aggravated sentences despite the presence of numerous mitigating factors. In ground two,

Petitioner alleges that her attorney provided ineffective assistance of counsel during the trial phase and on direct appeal in violation of the Sixth and Fourteenth Amendments. Specifically, Petitioner alleges that her lawyer failed to challenge the voluntariness of her statements to police, in that counsel failed to file a pretrial motion regarding voluntariness and failed to cross-examine the police detective regarding the conditions under which she was questioned. Petitioner further alleges that her lawyer failed to ensure that her interview with a defense expert was privileged. She also contends that counsel refused to allow her to testify at trial. Petitioner's final ineffective assistance claim alleges that her lawyer failed to properly exhaust her appellate remedies regarding <u>Blakely</u> violations. In ground three, Petitioner alleges that the police detectives who questioned her violated her Fifth Amendment privilege against self-incrimination by taking advantage of the circumstances and coercing her into making statements. In ground four, Petitioner alleges that the trial court denied her request to introduce statements by her co-defendant regarding his history of violence and threats of harm while they were on the run. The trial court further prevented testimony on these issues by a defense expert as evidence of Petitioner's state of mind. Petitioner alleges that the trial court's actions violated her Sixth Amendment right to confront witnesses against her and the right to compel the appearance of witnesses in her favor.

The District Court Judge screened the amended petition on July 9, 2010, and ordered Respondents to file an answer. Doc. 5. Respondents filed an initial Answer to Petition for Writ of Habeas Corpus on August 23, 2010. Doc. 10. Petitioner then filed a Reply on September 16, 2010. Doc. 11. After reviewing Respondents' initial answer, which was limited to affirmative defenses, this court ordered Respondents to file a supplement addressing the merits of Petitioner's claims. Doc. 12. On April 8, 2011, Respondents filed a Supplemental Answer to Amended Petition for Writ of Habeas Corpus along with supporting attachments. Doc. 13-19. Petitioner then filed a Reply to Supplemental Answer on April 27, 2011. Doc. 20.

The Arizona Court of Appeals summarized the facts of the case as follows:

The State initially charged Lankford and her husband, co-defendant Jimmy Lynn Odom, with the premeditated murder and felony murder of Duard Stanphill, and with the underlying felonies of kidnapping, burglary in the first degree, armed robbery, and theft. The charges arose from an incident that occurred after Stanphill befriended Lankford and Odom in the Canyon Club Bar in Williams, Arizona, on September 11, 2001. The couple, arriving from California, had a malfunctioning car and no money.

Upon leaving the bar, Lankford and Odom accompanied Stanphill to his campsite in the Kaibab National Forest where they continued to drink and socialize. At some point in the evening, Stanphill went into his camper and undressed to his underwear. Lankford left Odom by the campfire and went inside the camper to get another drink.

As she and Stanphill talked in the camper, Odom burst in and hit Stanphill in the head with a hammer, breaking the head off the hammer. As Stanphill "hollered, 'Jimmy, why,'" Odom told Lankford to "get me something to tie him up with." Lankford then handed Odom a "clock cord," but when that "didn't work," Odom began tying Stanphill's left wrist with the electrical cord from a fan.

Odom then told Lankford to "get a gun," and she walked into the bedroom area of the camper and retrieved a Savage .22-250 Model 110 bolt-action rifle. As Odom stood over Stanphill tying his hands, Lankford discharged the weapon, taking off "half of the top of [Stanphill's] head."[1] Odom was situated so near the victim at the time that debris from the shot's impact hit Odom in the forehead, causing him to bleed.

Immediately following the shooting, Odom told Lankford "to grab everything," and she and Odom gathered items from the victim's camper. They took several weapons, including the Savage Model 110, whiskey, cigarettes and "two plastic buckets full of change." Lankford was "grabbing stuff" and handing it to Odom, who was putting it in their car. She "grabbed" some of the weapons and also "the change, and . . . two bottles of whiskey - two or three," and then they left in their car.

Thereafter, the couple drove towards Texas, stealing a min-van in New Mexico after their vehicle broke down and transferring the guns and other stolen items to the van. They abandoned the van after it ran out of gas in West Texas near Pecos. Several of the stolen weapons were in the van when police located it on September 16, including the Savage Model 110. Some truckers picked up Odom and Lankford, and they ended up near Houston.

Lankford and Odom eventually headed into the "Big Thicket" area of East Texas, a region of "extremely dense forest, marshes, sloughs, extremely thick vegetation . . . [with] deer camps and deer stands." After a "manhunt" of several days involving several law enforcement agencies, Lankford and Odom were apprehended on September 24 in a camper where they were staying.

---

[1] Lankford gave several versions of the shooting prior to trial. Initially, she told police that she handed the gun to Odom, who actually shot the victim. When the prosecutor interviewed Lankford's expert witness, Dr. Kathleen Ferraro, Ferraro stated that Lankford told her that Lankford had been handing the weapon to Odom when it went off. At trial, Lankford's position was that the weapon accidentally fired when she moved the bolt.

- 4 -

**DISCUSSION**

Respondents contend that Petitioner's claims in grounds one, three and four are procedurally defaulted because Petitioner failed to properly raise them in the state court. Regarding the ineffective assistance of counsel claims in ground two, Respondents concede that Petitioner properly exhausted her state court remedies but argue that Petitioner has failed to satisfy the standards for habeas relief.

**A.  Procedural Default**

**1.  Legal Standards**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 845. In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1472-73 (9th Cir.1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); Tamalini v. Stewart, 249 F.3d 895, 898-99 (9th Cir. 2001). "Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is

unexhausted regardless of its similarity to the issues raised in state court." Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." Hivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996)).

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. See Rose v. Lundy, 455 U.S. 509, 519-20 (1982); Harris v. Reed, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring). If remedies are still available in state court, the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. Id. However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. Teague v. Lane, 489 U.S. 288, 298-99 (1989); see also Sandgathe v. Maass, 314 F.3d 371, 376 (9th Cir. 2002) (a defendant's claim is procedurally defaulted when it is clear that the state court would hold the claim procedurally barred). The federal court will not consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Dretke v. Haley, 124 S.Ct. 1847, 1851-52 (2004); Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

A procedural default may also occur when a petitioner raises a federal claim in state court but the state court declines to address the claim because the petitioner failed to meet a state procedural requirement. Coleman, 501 U.S. at 729-30. In such cases, federal habeas review is precluded if the state court opinion contains a plain statement clearly relying on a state procedural bar that presents an independent and adequate basis for the court's decision. See Harris, 489 U.S. at 263. A state procedural default ruling is "independent" unless resolution of the issue depends on a federal constitutional ruling. Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Stewart v. Smith, 536 U.S. 856, 860 (2002). A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" Johnson v. Mississippi, 486 U.S. 578,

587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-63 (1982)). Moreover, even if after rejecting a federal claim on procedural grounds, the state court goes on to discuss the merits, the procedural bar is not eliminated. See Harris at 264 n.10; Poland v. Stewart, 169 F.3d 573, 578 n.8 (9th Cir. 1998). As with defaulted claims that were not fairly presented, a federal court may still review the merits of a defaulted claim based on a state procedural bar if the petitioner can establish cause and prejudice. See Coleman, 501 U.S. at 750-51.

**2. Ground One**

Petitioner's claim in ground one alleges that the trial court's imposition of aggravated sentences violated the Fourteenth Amendment, though she fails to identify what section or clause has been violated. Petitioner argues that the trial court found five mitigating factors and only one aggravating factor but failed to engage in a balancing of the factors. She claims the court wrongfully imposed aggravated sentences for the three predicate offenses of kidnaping, burglary and armed robbery.

In her direct appeal to the Arizona Court of Appeals, Petitioner raised a claim that the trial court abused its discretion in imposing an aggravated sentence of natural life in prison. Doc. 10, Exh. B at 47-50. That claim, however, did not allege a violation of the Fourteenth Amendment or any other federal constitutional provision. Id. Likewise, the petition for review to the Arizona Supreme Court failed to allege that the trial court's imposition of an aggravated sentence violated the Fourteenth Amendment. Doc. 10, Exh. C at 10-11. Further, none of Petitioner's post-conviction relief filings raised a Fourteenth Amendment claim based on the imposition of aggravated sentences. Doc. 10, Exh. G, J, L.

Petitioner addresses the exhaustion issue in her reply and contends that this claim "has consistently been presented as a constitutional violation throughout her appeal process." Doc. 20 at 2. Plaintiff fails to identify, however, anywhere in her direct appeal or post-conviction relief filings that she has raised this aggravated sentence claim as a violation of the Fourteenth Amendment. The court's review of her state court filings demonstrates that a Fourteenth Amendment claim was never raised. By failing to present the claim in the state court, Petitioner has failed to exhaust her state court remedies. Moreover, Petitioner would

1 no longer have a remedy if she returned to the state court.[2] As a result, the claim is procedurally defaulted. Petitioner has presented nothing in her reply to establish cause for the default, nor has she shown a miscarriage of justice to overcome the procedural default. Doc. 20. The court will therefore recommend that the claim in ground one be denied.

### 3. Ground Three

Petitioner alleges in ground three that the Phoenix police detectives who questioned her after she was arrested, coerced statements from her by taking advantage of her vulnerable condition. She alleges that their actions violated the Fifth Amendment. Petitioner did not raise this claim in her direct appeal. Doc. 10, Exh. B. She raised no claim challenging the statements she made to the police detectives. Id. Likewise, in her petition for review to the Arizona Supreme Court on direct review, Petitioner raised no challenge to the statements she provided to police. Doc. 10, Exh. C.

In her state petition for post-conviction relief, Petitioner did raise a claim that her post-arrest statements to police were coerced in violation of the Fifth Amendment. Doc. 10, Exh. G at 5. The trial court, however, found the claim to be precluded under Rule 32.2(a)(3) of the Arizona Rules of Criminal Procedure which provides that a defendant is precluded from relief on any ground that was waived at trial or on appeal. The trial court ruled that because Petitioner did not challenge at trial or on direct appeal the voluntariness of her statements to police, the claim was precluded on post-conviction review. Doc. 10, Exh. H at 4.

The trial court relied on a state procedural bar that presents an independent and adequate basis for the court's decision. See Stewart v. Smith, 536 U.S. 856, 860 (2002) (state court's determination under Ariz. R. Crim. P. 32.2(a)(3) was independent of federal law); Martinez Villareal v. Lewis, 80 F.3d 1301, 1306 (9th Cir. 1996) (Arizona's rule of preclusion is regularly and consistently followed). The claim is therefore procedurally defaulted based on Petitioner's failure to satisfy a state procedural requirement.

---

[2] The time has passed to seek post-conviction relief in state court under Rule 32.4(a) of the Arizona Rules of Criminal Procedure and Petitioner has not shown that any of the exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him.

- 8 -

1    In her reply, Petitioner addresses the voluntariness of her post-arrest statements but
2 she fails to refute Respondents' procedural default argument. She does not argue cause and
3 prejudice or a miscarriage of justice. The court will therefore recommend that the claim in
4 ground three be denied.

### 4. Ground Four

Petitioner alleges in ground four that the trial court violated her Sixth Amendment right to confront the witnesses against her and the right to compulsory process for obtaining witnesses in her favor. She claims these rights were violated when the court precluded her from introducing statements by her co-defendant regarding his history of violence and threats of harm while they were on the run and when the court prevented testimony on these issues by a defense expert as evidence of Petitioner's state of mind.

In the section of her direct appeal brief in which she addressed the trial court's alleged error in precluding threatening statements by the co-defendant, Petitioner did not allege a Sixth Amendment or federal constitutional violation. Doc. 10, Exh. B at 29-31. Petitioner simply argued that the trial court abused its discretion and that it should have admitted the statements under the state rules of evidence. Because it was not raised as a federal constitutional claim, the Arizona Court of Appeals analyzed the issue as a state law evidentiary and harmless error question. Doc. 10, Exh. A at 19-21.

By failing to raise the trial court's preclusion of the co-defendant's statements regarding violence and threats as a Sixth Amendment claim, Petitioner has failed to exhaust her state court remedies. Moreover, as with ground one, Petitioner would no longer have a remedy if she returned to the state court. As a result, the claim is procedurally defaulted. Petitioner fails to address this issue in her reply and thus has presented nothing to establish cause for the default, nor has she shown a miscarriage of justice to overcome the procedural default. Doc. 20. The court will therefore recommend that the claim in ground four be denied.

**B.     Merits Analysis of Ground Two Claims**

     **1.     AEDPA Standard of Review**

Under the AEDPA[3], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Taylor, 529 U.S. at 405-06. "A state court's decision can involve an 'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002). Thus, the "unreasonable application" clause requires the state court's application of Supreme Court law to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

     **2.     Legal Standard for Ineffective Assistance Claims**

The two-prong test for demonstrating ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an

---

[3] Antiterrorism and Effective Death Penalty Act of 1996.

- 10 -

ineffective assistance claim, a convicted defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Regarding prejudice, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." Id. at 687. It is not enough to merely show "that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693.

In the context of a habeas petition, a petitioner must do more than demonstrate to the federal court that the state court applied Strickland incorrectly. Bell v. Cone, 535 U.S. 685, 698-99 (2002). Rather, a petitioner must demonstrate that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Id. "The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S.Ct. 770, 788 (2011).

### a. Failure to Challenge the Voluntariness of Statements

Among her four allegations of ineffective assistance of counsel in ground two, Petitioner first contends that her trial counsel failed to challenge the voluntariness of her statements to police by failing to file any pretrial motions on the issue and failing to cross-examine the police detective regarding the circumstances under which she was questioned. Petitioner fails to argue that there was a reasonable probability that the result would have been different if counsel had challenged the voluntariness of her statements. She merely provides a blanket assertion that all four alleged errors by counsel "prejudiced the entire judicial process." Doc. 4 at 7.

The state trial court considered this claim on post-conviction relief. The trial court initially found that these allegations raised a colorable claim for relief. Doc. 10, Exh. H at 5. The court, therefore, held an evidentiary hearing at which Petitioner and her trial counsel testified. Doc. 10, Exh. I at 1-5. In a written decision following the evidentiary hearing, the trial court ruled as follows:

> In this case, trial counsel considered whether to request a voluntariness hearing at length. She investigated petitioner's claims that her statement was not voluntary. She reviewed the documents in the case and interviewed the appropriate witnesses. She weighed the benefits of getting evidence favorable to the defense in, without having petitioner testify, thereby holding open the option for a later determination. The court finds that this was a reasonable strategy, and that trial counsel's decision was well within the standards of professional competence.
> Even if the Court were to assume that trial counsel's representation fell below the minimum standard of professional competence, petitioner has not shown prejudice. The evidence does not show that petitioner's confession was involuntary or that its introduction so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.

Doc. 10, Exh. I at 3-4. The trial court went on to find that the conditions under which she was questioned by police did not support a finding that her statements were coerced or involuntary. Doc. 10, Exh. I at 4. Finally, the trial court found that there was substantial evidence against her separate from her statements to police. Id. The court determined, therefore, that Petitioner failed to demonstrate prejudice. Id. at 5.

Petitioner's conclusory claim on this issue in her habeas petition, in addition to the brief discussion in her reply, fail to demonstrate that the state court's decision denying this claim was contrary to, or an unreasonable application of, Strickland, or that the decision was based on an unreasonable determination of the facts. Because Petitioner has failed to satisfy the standard for habeas relief on this claim, the court will recommend that it be denied.

### b. Waiver of Privilege as to Defense Expert

Petitioner next contends that her lawyer failed to ensure that an interview between Petitioner and a defense expert was privileged. Petitioner says nothing more about this claim in her petition and she addressed it only briefly in her reply. She claims in her reply that her

- 12 -

1  counsel failed to object during the prosecutor's pre-trial interview of the defense expert, thus
2  waiving any privilege. Doc. 20 at 5.

3  The state trial court considered this claim on post-conviction relief. The trial court
4  determined that counsel's performance was not deficient on this issue. Doc. 10, Exh. H at
5  6. The court found that defense counsel convinced the court to preclude admission of the
6  prosecutor's interview with the expert for all but impeachment or rebuttal purposes. Id.
7  Additionally, the court explained, the interview was never used against Petitioner. Id.

8  Petitioner fails to address these findings by the state court and thus fails to show that
9  the decision was contrary to, or an unreasonable application of, Strickland, or that the
10 decision was based on an unreasonable determination of the facts. Petitioner has, therefore,
11 failed to satisfy the standard for habeas relief on this claim. Consequently, the court will
12 recommend that the claim be denied.

### c. Refusal to Allow Defendant to Testify

14 Petitioner next alleges that her lawyer did not allow her to testify at her own trial.
15 Petitioner contends that she was unaware that she had the right to testify. In her reply,
16 Petitioner states that her lawyer failed to inform her of the absolute right to testify. Doc. 20
17 at 6. She argues that because she had an absolute right to testify, her lawyer provided
18 ineffective assistance by neglecting to so inform her.

19 The state trial court considered this claim on post-conviction relief. The court
20 distinguished in a footnote Petitioner's claim that counsel refused to allow her to testify from
21 her similar claim that counsel was ineffective for advising her not to testify. Doc. 10, Exh.
22 H at 6. The court set an evidentiary on the question of whether counsel refused to let her
23 testify and decided without a hearing that counsel was not ineffective for advising her not to
24 testify. Id. Between Petitioner's habeas petition and her reply, she does not clearly indicate
25 whether she is claiming counsel refused to allow her to testify or was ineffective when
26 advising her not to testify.

27 Regarding the claim that counsel was ineffective for advising Petitioner not to testify,
28 the trial court pointed out several different ways the State could have impeached her

testimony. Doc. 10, Exh. H at 6. The court further explained how counsel found other ways to present evidence "sufficient to competently argue her defense while protecting her client from impeachment." Id. The court therefore found that in light of all the circumstances, counsel's advice not to testify was reasonable given the facts known to her at the time. Id. As a result, the court found no deficient performance. Id. The court went on to explain that Petitioner had not demonstrated a reasonable probability that the result of the proceedings would have been different. Id.

Petitioner's conclusory assertion in her petition and limited discussion in her reply fail to demonstrate that the decision was contrary to, or an unreasonable application of, Strickland, or that the decision was based on an unreasonable determination of the facts. Petitioner having failed to satisfy the standard for habeas relief on this claim, the court will recommend that it be denied.

Regarding the claim that counsel refused to allow Petitioner to testify, the trial court held an evidentiary hearing at which Petitioner and trial counsel testified. Doc. 10, Exh. I at 5-6. The court found, based on the evidence and credibility of the witnesses, "that trial counsel told petitioner she had an absolute right to testify." Id. at 5. The court found there was conflicting evidence on the issue, but there was no evidence that trial counsel advised Petitioner she could not testify. Id. Accordingly, the trial court found that trial counsel's actions were within the standards of professional competence, and that even if there was deficient performance, Petitioner failed to show prejudice because most of what she would have testified to was submitted to the jury through other witnesses. Id.

Petitioner's habeas petition and her reply fail to present any meaningful challenge to the trial court's findings after the evidentiary hearing. This court finds that Petitioner has failed to demonstrate that the state trial court's decision denying this claim was contrary to, or an unreasonable application of, Strickland, or that the decision was based on an unreasonable determination of the facts. Because Petitioner has failed to satisfy the standard for habeas relief, the court will recommend that this claim be denied.

####           d.      Failure to Exhaust Appellate Remedies

Lastly, Petitioner alleges that her lawyer provided ineffective assistance of counsel on appeal by failing to exhaust her appellate remedies with respect to Blakely issues that affected her sentences. Petitioner fails to explain in her petition to what specific "Blakely issues" she is referring. Likewise, her reply fails to provide any discussion of this issue other than one case citation regarding the importance of preserving issues for future federal review.

The trial court addressed this issue on state post-conviction review. The court explained that appellate counsel raised and argued a Blakely issue before the Arizona Court of Appeals. Doc. 10, Exh. H at 7. The Court of Appeals reviewed the claim and held that Petitioner's sentence did not violate Blakely. Id. Thus, the trial court concluded that Petitioner failed to demonstrate any prejudice and it summarily dismissed this claim. Id.

Petitioner's habeas petition and her reply present virtually nothing to challenge the trial court's ruling on this issue. The one paragraph argument in Petitioner's reply fails to address the specific issue on which she seeks relief. Doc. 20 at 8. This court finds that Petitioner has failed to demonstrate that the state trial court's decision denying this claim was contrary to, or an unreasonable application of, Strickland, or that the decision was based on an unreasonable determination of the facts. Because Petitioner has failed to satisfy the standard for habeas relief, the court will recommend that this claim be denied.

### C.     Conclusion

Having determined that the claims in grounds one, three and four are procedurally defaulted, and that Petitioner has failed to satisfy the standard for habeas relief on the ineffective assistance of counsel claims in ground two, the court will recommend that the petition be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED:**

That the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED**:

That a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Amended Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 14th day of November, 2011.

*Edward C. Voss*
Edward C. Voss
United States Magistrate Judge